**FIRST PUERTO RICAN FESTIVAL OF NEW JERSEY, INC.,**
Plaintiff,

v.

**CITY OF VINELAND, Anthony Campanella, Mayor of the City of Vineland, and City of Vineland Board of Recreation Commissioners, Defendants.**

Civil Action No. 98–3185.

United States District Court,
D. New Jersey.

July 15, 1998.

Frank L. Corrado, Rossi, Barry, Corrado, Grassi & Radell, P.C., Wildwood, NJ, Lenora M. Lapidus, David Rocah, American Civil Liberties Union of New Jersey, Newark, NJ, for Plaintiff, First Puerto Rican Festival of New Jersey, Inc.

John C. Petrella, Brian O. Lipman, J. Frank Vespa–Papaleo, Genova, Burns & Vernoia, Livingston, NJ, Richard P. Tonetta, Vineland City Attorney, Vineland City, NJ, for Defendants, City of Vineland, Anthony Campanella, Mayor of City of Vineland and City of Vineland Bd. of Recreation Com'rs.

## OPINION

ORLOFSKY, District Judge.

First Puerto Rican Festival of New Jersey, Inc. ("Plaintiff"), filed this action against the City of Vineland (the "City"), the City's Mayor, Anthony Campanella, and the City of Vineland Board of Recreation Commissioners (collectively "Defendants") alleging that City of Vineland Ordinance Nos. 97–85 and 97–86 (collectively the "Ordinances") enacted by the City on November 25, 1997, have a chilling effect on Plaintiff's planned parade and festival in violation of, *inter alia,* the First Amendment to the United States Constitution. For the reasons set forth below, Plaintiff's motion for a temporary restraining order will be granted.

## I. BACKGROUND

For the past thirty years, Plaintiff has held an annual festival in the City celebrating Puerto Rican culture and identity. This year, Plaintiff has scheduled its week-long festival and parade to run from July 19 through July 26. It is uncontested that City of Vineland Ordinance No. 97–85, regulating the use of public parks, and City of Vineland Ordinance No. 97–86, regulating the use of streets, would require Plaintiff to reimburse the City for all "extraordinary costs" incurred by the City for Plaintiff's festival and parade. *See* Ord. No. 97–85 § 4(B); Ord. No. 97–86 § 5(C). Moreover, both Ordinances define "extraordinary costs" to include overtime pay for necessary police officers, but provide that "[e]xtraordinary costs shall not relate to any costs associated with the content of the speech, message or information disseminated." *See* Ord. No. 97–85 § 1(K); Ord. No. 97–86 § 1(L).[1]

Accordingly, Defendants granted the necessary permits to Plaintiff to allow the parade and festival to proceed contingent upon the reimbursement of the City by Plaintiff for "extraordinary costs." Plaintiff filed this action on July 7, 1998, and simultaneously moved for an order pursuant to Fed.R.Civ.P. 65 temporarily restraining Defendants from enforcing the reimbursement requirements of the Ordinances. By telephone conference calls with counsel on July 7, 1998, and July 8, 1998, the Court established a briefing schedule. On July 14, 1998, this Court heard oral arguments on Plaintiff's motion, the merits of which are discussed below.

## II. DISCUSSION

■ On a motion for preliminary injunctive relief, "the moving party must demonstrate both: (1) a likelihood of success on the merits; and (2) the probability of irreparable harm if relief is not granted. In addition to these showings by the moving party, the Court must also consider: (3) the effect of the grant of preliminary relief on the non-moving party; and (4) whether the public interest will be served by the preliminary injunctive relief." *See Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Township,* 996 F.Supp. 409, 433 (D.N.J.1998) (citing, *e.g., Schulz v. United States Boxing Association,* 105 F.3d 127, 131 n. 6 (3d Cir.1997)); *see also Marilyn Manson, Inc. v. New Jersey Sports & Exposition Authority,* 971 F.Supp. 875, 883 (D.N.J.1997).

### A. Irreparable Harm

Neither party has stated the correct legal standard for evaluating irreparable harm in a First Amendment case in the Third Circuit. Defendants rely on the standard applied in typical civil cases. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Temporary Restraints (dated Jul. 10, 1998) 15–16. Plaintiff at least cites *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), for the proposition that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 347, 96 S.Ct. 2673. Plaintiff, however, interprets this language to mean that a First Amendment challenge *per se* involves irreparable harm.

■ In this circuit, however, a First Amendment challenge does not necessarily imply a loss of First Amendment freedoms and therefore "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." *Hohe v. Casey,* 868 F.2d 69, 72–73 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989); *see Waterman v. Verniero,* 12 F.Supp.2d 364, 377

---

1. The Ordinances require that, in order to hold the festival in a public park, Plaintiff must provide insurance naming the City as an additional insured. *See* Ord. No. 97–85 § 4(B). The parties have agreed, however, that the City will be named as an additional insured on the vendors' insurance policies and that this arrangement will satisfy the requirements of Ord. No. 97–85 § 4(B). Accordingly, the parties have stipulated that issues relating to the constitutionality of this insurance requirement are now moot.

(D.N.J.1998). Instead, the Third Circuit has held that in order to establish the probability of irreparable harm, Plaintiff must demonstrate "a chilling effect on free expression." *Hohe,* 868 F.2d at 73; *Waterman,* 12 F.Supp.2d at 377.

■ Plaintiff has alleged that "the imposition of these costs will make it impossible to hold the festival and parade." *See* Affidavit of Leonides Negron (dated Jul. 7, 1998) ("Negron Aff.") ¶ 20. Defendants have provided evidence which tends to undermine the extent of Plaintiff's financial instability, *see* Affidavit of Louis Cresci (dated Jul. 10, 1998), but on the limited record before me, I conclude that Plaintiff has made the required showing that the Ordinances as applied in this case will "chill" the exercise of First Amendment rights. Accordingly, I find that Plaintiff will suffer irreparable harm in the absence of this injunction.

**B. Likelihood of Success on the Merits**

■ At the outset, I find that Plaintiff has established a reasonable likelihood of proving that its festival is, at least in part, speech protected by the First Amendment. *See, e.g.,* Negron Aff. ¶ 22. The parties do not dispute that the festival includes and contemplates expression which is protected by the First Amendment. Moreover, I find that Plaintiff has established a reasonable likelihood of proving that Defendants' enforcement of these ordinances would violate the First Amendment.

In *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), the Supreme Court struck down a similar ordinance because it imposed content-based restrictions on speech. The Supreme Court found that "[l]isteners' reaction to speech is not a content-neutral basis for regulation." *Id.* at 134, 112 S.Ct. 2395. Therefore, costs

"associated with the public's reaction to the speech" are unconstitutional. *Id.* The Supreme Court concluded that the assessment of fees based on the amount of police protection required for a demonstration imposed an unconstitutional fee "based on the content of speech." *Id.*

Defendants have estimated that, if enforced, the Ordinances would require Plaintiff to reimburse the City for extraordinary costs including $15,000.00 for extra police. *See* Estimated Extraordinary Costs for Event Application No. 3 (undated). The police department budgeted $15,000.00 for this year's festival based upon last year's cost of $12,925.88. *See id.;* Memorandum from Lt. Charles Schiapelli to Ms. Linda Dechen (dated Feb. 25, 1998) ¶ 2. Moreover, there is evidence in the record indicating that this amount is based in part on the perceived need to "keep potential trouble makers out of the park." *See id.* ¶ 3(c).

Defendants have provided an affidavit which purports to justify each of the City's estimated costs on a content-neutral basis. *See* Affidavit of Mark Guglielmi (dated Jul. 10, 1998). Despite a thorough analysis of costs including dumpsters, bleachers, temporary electric poles and portable toilets, *see id.* ¶¶ 6–9, no mention is made of the police department's costs. On the sparse record before me at this stage of the litigation, I find that Plaintiff has established a reasonable likelihood of proving that the reimbursement provisions of the City's ordinances as applied to Plaintiff are unconstitutional.[2]

Defendants fail to cite, much less discuss, the United States Supreme Court's decision in *Forsyth County* and elect instead to rely upon the Middle District of Georgia's decision in *United Food & Commercial Workers Union Local 442 v. City of Valdosta,* 861 F.Supp. 1570 (M.D.Ga.

---

**2.** Due to the nature of these preliminary proceedings, and by virtue of the limited record before me, I, of course, intimate no view as to any future determinations I may make based

upon a more fully developed record, whether in the nature of a preliminary injunction, or a final disposition on the merits.

1994). Not surprisingly, however, that case is consistent with the Supreme Court's decision in *Forsyth County* and therefore supports my conclusion here. In *Valdosta,* the court held:

> The state may not delegate to an issuing official the discretion to set a [parade] fee based on the amount of police protection necessary to protect the speaker at issue. If such discretion were allowed, cities could charge higher fees for those seeking to espouse unpopular viewpoints in that increased police protection would be necessary.

*Id.* at 1584. In that case, the court did find the ordinance constitutional, but only because the fee was not set by the issuing official for each individual parade, as it is in this case, but was established "from time to time by the Mayor and Council." *See id.* Thus, Defendants' curious reliance on *Valdosta* is misplaced.

### C. Effect on Defendant and Public Interest

■ The remaining factors which I must consider on a motion for a temporary restraining order support the entry of such an order. If Defendants ultimately prevail on the merits of this action, they may still recoup the reimbursable costs. Therefore, Defendants will not be unduly burdened by such an order. I also find that the public interest in the uninhibited exercise of free speech outweighs the City's interest in recovering the costs of the parade and festival. Accordingly, Plaintiff's motion for a temporary restraining order will be granted.

### D. Security

■ Rule 65(c) ordinarily conditions the grant of preliminary injunctive relief on the posting of a bond. The Third Circuit, however, has recognized exceptions to that general rule. *See Temple University*

*v. White,* 941 F.2d 201, 219 (3d Cir.1991), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). "[A]t least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Id.* (quotation omitted). Thus, the decision ultimately "involves a balance of the equities." *See Elliott v. Kiesewetter,* 98 F.3d 47, 60 (3d Cir.1996). "The court should also consider whether the applicant seeks to enforce a federal right and, if so, whether imposing the bond requirement would unduly interfere with that right." *Borough of Palmyra Board of Education v. F.C.,* 2 F.Supp.2d 637, 645–46 (D.N.J. 1998).

■ I find that Plaintiff cannot afford such a bond. *See, e.g.,* Negron Aff. ¶ 20. Moreover, the equities involved in Plaintiff's attempt to vindicate its First Amendment rights, and the threat that protected speech may be quashed, outweigh the City's potential ability to recover the extraordinary costs of Plaintiff's parade and festival. Accordingly, I will not require Plaintiff to obtain a bond in this case.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for an Order temporarily restraining Defendants from enforcing the reimbursement provisions of the Ordinances for the ten day period from July 15, 1998, through July 29, 1998, will be granted.[3] In addition, the Court will enter an Order to Show Cause as to whether a preliminary injunction should issue pursuant to Fed.R.Civ.P. 65(a), returnable on July 29, 1998, at 4:00 p.m. The Court will enter an appropriate Order.

### ORDER

This matter having come before the Court on the motion of Plaintiff, First

---

**3.** The ten days, of course, are calculated by excluding intermediate weekends and legal holidays. *See* Fed.R.Civ.P. 6(a). Moreover, the Order which I enter today constitutes a temporary restraining order rather than a preliminary injunction. *See, e.g., Casey v. Planned Parenthood of Southeastern Pennsylvania,* 14 F.3d 848, 855 (3d Cir.1994), *stay denied,* 510 U.S. 1309, 114 S.Ct. 909, 127 L.Ed.2d 352 (1994).

Puerto Rican Festival of New Jersey, Inc., for temporary restraints, Frank L. Corrado, Esq., Rossi, Barry, Corrado, Grassi & Radell, P.C., and Lenora M. Lapidus, Esq., and David Rocah, Esq., American Civil Liberties Union of New Jersey, appearing on behalf of Plaintiff, and John C. Petrella, Esq., Brian O. Lipman, Esq., and J. Frank Vespa–Papaleo, Esq., Genova, Burns & Vernoia, and Richard P. Tonetta, Esq., Vineland City Attorney, appearing on behalf of Defendants, City of Vineland, Anthony Campanella, Mayor of the City of Vineland and City of Vineland Board of Recreation Commissioners; and,

The Court having considered the submissions and arguments of the parties, for the reasons set forth in the Opinion filed concurrently with this Order;

IT IS, on this 15th day of July, 1998, hereby ORDERED that the motion for temporary restraints is GRANTED; and,

IT IS FURTHER ORDERED that Defendants are enjoined, for the 10 day period from July 15, 1998, through July 29, 1998, from enforcing against Plaintiff the reimbursement provision of City of Vineland Ordinance No. 97–85, contained in § 4(B), and the reimbursement provision of City of Vineland Ordinance No. 97–86, contained in § 5(C); and,

IT IS FURTHER ORDERED that Defendants are ordered to show cause on July 29, 1998, at 4:00 p.m., as to why a preliminary injunction should not issue pursuant to Fed.R.Civ.P. 65(a).